George **W. GRIFFIN, Jr. and William R.** Griffin, Co-Executors of the Estate of George W. Griffin, deceased,

v.

**UNITED STATES of America.**

No. 1663.

United States District Court
E. D. Kentucky,
Lexington Division.
Jan. 30, 1967.

Bullitt, Dawson & Tarrant, Louisville, Ky., for plaintiffs.

Richard M. Roberts, Acting Asst. Atty. Gen., Washington, D. C., George I. Cline, U. S. Atty., Lexington, Ky., David A. Wilson, Jr., Robert F. Sama, Attys., Dept. of Justice, Washington, D. C., for the United States.

## OPINION

SWINFORD, Chief Judge.

This is an action brought by the executors of the estate of George W. Griffin, deceased, asking for a refund of the federal estate taxes in the amount of $28,025.98 with interest.

George W. Griffin died testate on May 14, 1958. His will, duly admitted to probate, contained a bequest to the Kentucky Trust Company, Louisville, Kentucky, of $100,000 to be held in trust for his widow for life. The parts of the will involved in this action are quoted as follows. The language which the court considers pertinent in the determination of the issues presented is emphasized by italics.

*"the principal to be held intact forever,* and the *income to be used for the education of my grandchildren* and for the education of deserving boys and girls in the manner hereinafter set out:

"(1) The Trustee shall use so much of the net *income from this trust as may be necessary to assist any grandchild of mine* who desires a four-year college education to obtain such college education in a Protestant Christian College; provided, however, that the *sum so expended for or on behalf of any grandchild of mine* shall not exceed $750.00 in any one school year. *This trust for the benefit of my grandchildren* shall terminate not later than twenty-one (21) years after the date

of the death of the last survivor of the group composed of myself, my wife, my three children, and any of my grandchildren who are living at the date of my death; and, at the expiration of such period, *the remainder of this trust estate shall be administered entirely as a charitable trust* in accordance with the provisions of the next succeeding paragraph.

"(2) *It is my intention and desire to make my grandchildren the primary beneficiaries of this trust, and if at any time any grandchild of mine desires to avail himself or herself of the benefits of this trust, he or she shall be entitled to such benefits even to the exclusion of all other persons.* However, if at any time the net income from this trust is in excess of the amount required to provide college educations for those of my grandchildren who then desire same, in accordance with the preceding paragraph, I direct that my Trustee shall use the balance of said net income to provide as many annual scholarships of Five Hundred Dollars ($500.00) each, as possible, to worthy boys or girls residing in Southeastern Kentucky who are ambitious to receive a college education at any Protestant Christian College, and who, without financial assistance would be unable to attend college."

After the probate of the will the widow, within the statutory period, renounced its provisions. KRS 392.080(1). The executors, the widow and other persons interested in the estate then filed an action in the Laurel County, Kentucky Circuit Court against the trustee of the $100,000 estate for a construction of the will. A judgment of the state court was entered which provided among other things that the trust "shall be and is a charitable trust, and shall be administered, known and adjudged to be a charitable trust for all purposes and things."

■■ It is not seriously contended by the plaintiffs that this court is bound by the judgment of the state court and in order to first eliminate less controverted matters from the case, the court holds that the construction of the trust as "charitable" by the state court does not affect the tax questions before this court. Where the decision of a state court impinges upon federal interests, and, as in this case, directly affects the collection of federal taxes, this court is not bound by such decision. McCombs v. United States, D.C., 348 F.Supp. 568, and cases cited in that opinion.

■ While the record presents facts as to the conduct of the trust, the demands upon it, the number of persons who have benefited by it and the fact that none of the grandchildren of the testator have received benefits, it is my judgment that no factual situation would alter the terms of the instrument creating the trust and that the ultimate decision rests solely upon the language of the will. In construing this will the well established and time honored rule of law must be applied. If the intention of the testator can be ascertained from the language employed, that intention controls regardless of collateral and subsidiary rules which may be employed in arriving at the intention when it is obscure. Hon v. Connelly, 253 Ky. 181, 69 S.W.2d 23; Day's Administrator v. Bright, 257 Ky. 359, 362, 78 S.W.2d 43.

■ It was clearly the intention of the testator to provide a private trust for the education of all of his grandchildren, including those who might be born after his death. When this primary object was completed the trust was to take on a charitable aspect. This raises the fundamental question of whether or not the amount of the charitable trust can be determined at the time of the death of the testator. The value of the estate must be fixed as of that time. Ithaca Trust Co. v. United States, 279 U.S. 151, 49 S.Ct. 291, 73 L.Ed. 647; Jackson v. United States, 376 U.S. 503, 84 S.Ct. 869, 11 L.Ed.2d. 871.

■ By the terms of the will, the non-charitable portion of the trust must terminate 21 years after the death of the last beneficiary. It is not possible to determine the value of the non-charitable

trust at the time of its termination as of the date of the death of the testator. It cannot be told the number of grandchildren eligible at any given time to receive the $750 per annum for four years to obtain a college education nor can it be determined what claims if any may be made by those eligible. No one can say what portion of the income will be used for charitable purposes and what portion will be used for non-charitable purposes. To sustain the position of the plaintiffs would be to ignore the provisions of Treasury Regulation, Section 20.2055–2(a), which provides that if the trust is created both for a charitable and private purpose deduction under the Internal Revenue Code of 1954, Sec. 2055 (a) (3), (26 U.S.C. § 2055, 1958 Ed.) may be taken of the value of the charitable beneficial interest only insofar as that interest is presently ascertainable and severable from the non-charitable interest. A value which cannot be determined from any known data but depends on speculation is not deductible. Humes v. United States, 276 U.S. 487, 48 S.Ct. 347, 72 L.Ed. 667.

■ The authorities cited by the plaintiffs to the effect that a charitable trust is not defeated simply because it may include and consider those who would otherwise be non-charitable beneficiaries are not in point. The rules expressed in the cases cited are sound but the facts of those cases are very different from the facts in the case at bar. The rule simply stated is that if the trust is a charitable trust, it may include relatives of the creator of the trust if they fall within the general class of cestuis que trustent. In other words, a trust providing for benefits to indigents is not defeated by the fact that some of the indigents may be children, grandchildren or close relatives of the party establishing the trust. There is no point in belaboring this question as the language of the will clearly distinguishes this case.

The court finds that the entire $100,-000 cannot be deducted as a charitable trust.

■ The plaintiffs' alternative position will now be discussed. This position, briefly, contemplates that if the scholarships for the benefit of decedent's grandchildren are determined to be for a private use rather than for a public use, the value of such scholarships is presently ascertainable and the estate is entitled to a deduction in the amount of the difference between the full $100,000 and the value of such scholarships as of the date of the decedent's death.

For the reasons mentioned hereafter, this court must disagree with this alternative position.

Of course, Section 2055 of the Internal Revenue Code of 1954 is still the pertinent section in this discussion of the plaintiffs' alternative position. However, an important role will be played by the Treasury Regulation concerning Section 2055. This regulation is Section 20.2055–2(a) (b). (See 1966 Federal Tax Regulations, Vol. 2, p. 288).

The facts indicate that this grant of scholarship funds, although presently benefiting persons other than decedent's grandchildren, is a conditional gift, although admittedly it is not conditional in the same sense as the trust arrangements were in the cases cited by the parties, Humes v. United States, supra, and Com'r of Internal Revenue v. Sternberger's Estate, 348 U.S. 187, 75 S.Ct. 229, 99 L.Ed. 246. In those two cases the trust arrangement for charitable purposes would have to become effective by the occurrence of certain events or it would never become effective. That is not the case here. In the present case the educational benefits to those other than the decedent's grandchildren become effective anytime there are funds available from the income of the trust corpus and the Griffin grandchildren do not take advantage of them because either they are not of college age or they do not attend a Protestant Christian college. So the scholarship grants to persons other than the decedent's grandchildren are conditioned upon either or both of the aforementioned requirements as set out in the decedent's will. The educa-

tional portion of this scholarship fund is therefore not free of this condition until 21 years after the death of the survivor of a group composed of the decedent, his wife, children and grandchildren alive at the decedent's death. The condition presently remains although there have been $19,000 of $500 scholarships granted to persons other than the decedent's grandchildren.

A reading of the aforementioned Treasury Regulation and its application to this particular fact situation indicates that the educational grants to persons other than the decedent's grandchildren will have to be deferred when one of the decedent's grandchildren qualifies for and decides to partake of the scholarship grants. In a sense, the grants to non-grandchildren are defeated whenever an eligible grandchild decides to apply for a scholarship.

Even if the trust arrangement is regarded as non-conditional within the purview of Section 20.2055–2(b), Section 20.2055–2(a) must still be satisfied. Section 20.2055–2(a) provides that "* * * deduction may be taken of the value of the charitable beneficial interest *only insofar as that interest is presently ascertainable,* and hence severable from the noncharitable interest." (Emphasis supplied) This is also the rule stated by the Supreme Court in Ithaca Trust Co. v. United States, supra, Merchants Nat. Bank of Boston v. Commissioner of Internal Revenue, 320 U.S. 256, 64 S.Ct. 108, 88 L.Ed. 35, and Henslee v. Union Planters Nat. Bank, 335 U.S. 595, 69 S.Ct. 290, 93 L.Ed. 259. The estate tax must be determined as of the date of the decedent's death. Jackson v. United States, supra.

How does this case law affect the present dispute? Because of the trust arrangement, grandchildren living at the decedent's death and those born after the decedent's death may share in the scholarship fund. At the time of his death in 1958 all three of his married children were capable of having children. Indeed, three children have been born since the decedent's death. Therefore,

it was impossible to determine, at the time of death, the number of grandchildren who would be eligible to share in the scholarship fund or at what stage of their development they might make claim upon it. This same uncertainty also carries over into the scholarship fund for those who are not the grandchildren of the decedent. In Humes v. United States, supra, in disallowing the deduction, the court made the following observation:

"But the fundamental question in the case at bar is * * * what construction shall be given to a statute. Did Congress, in providing for the determination of the net estate taxable, intend that a deduction should be made for a contingencey the actual value of which cannot be determined from any known data? Neither taxpayer, nor revenue officer—even if equipped with all the aid which the actuarial art can supply—could do more than guess at the value of this contingency. It is clear that Congress did not intend that a deduction should be made for a contingent gift of that character."

In Com'r of Internal Revenue v. Sternberger's Estate, supra, the issue was whether a deduction could be allowed when it was based on a charitable bequest that was to take effect only if the decedent's childless twenty-seven year old daughter died without descendants surviving her and her mother. The taxpayer presented actuarial evidence showing the probability of remarriage and additional evidence based upon census data which purportedly indicated the possibility of a first child being born to the life tenant. In disallowing the deduction, the court stated that there was

"* * * no statutory authority for the deduction from a gross estate of any percentage of a conditional bequest to charity where there is no assurance that charity will receive the bequest or some determinable part of it. Where the amount of a bequest to charity has not been determinable, the deduction properly has been denied." (At

page 199) of 348 U.S., at page 235 of 75 S.Ct.)

This requirement of determinability was also noted in Merchants Nat. Bank of Boston v. Commissioner of Internal Revenue, supra.

> "For a deduction * * * to be allowed, *Congress and the Treasury require that a highly reliable appraisal of the amount the charity will receive be available, and made, at the death of the testator.* Rough guesses, approximations, or even the relatively accurate valuations on which the market place might be willing to act are not sufficient." (At page 261 of 320 U.S., at page 111 of 64 S.Ct.; emphasis supplied)

Can a highly reliable appraisal be made, even by actuarial tables, in this peculiar fact situation? Here, the class to be benefited is not composed of life beneficiaries as in Ithaca Trust Co. v. United States, supra, and United States v. Provident Trust Co., 291 U.S. 272, 54 S.Ct. 389, 78 L.Ed. 793 (cited in defendant's brief). Life estates are much more readily and accurately ascertainable than the benefit to a class which can be enlarged by the volition of three separate couples of child bearing age. It is also not to be denied that the more grandchildren that can be born, the greater the possibility of income drain from charitable uses. The Humes and Sternberger decisions, supra, do not allow a deduction based on fact situations such as the present case where an increase in grandchildren will substantially affect the amount of the charitable bequest. In the Sternberger case, the court stated:

> "To whatever extent any person can defeat the fulfillment of any condition upon which a benefit to charity depends, to that extent the actuarial estimate that such benefit will reach charity is less dependable. The allowance of such a tax reduction as is here sought would open a door to easy abuse. The result might well be not so much to encourage gifts inuring to the benefit of charity as to encourage the writing of conditions into bequests which would assure charitable tax reductions without assuring benefits to charity.

> *       *       *       *       *       *

> "This Court finds no statutory authority for the deduction from a gross estate of any percentage of a conditional bequest to charity where there is no assurance that charity will receive the bequest or some determinable part of it. Where the amount of a bequest to charity has not been determinable, the deduction properly has been denied." (At pp. 198, 199 of 348 U.S., at p. 235 of 75 S.Ct.)

The words of the Court of Appeals for the First Circuit in the case of United States v. Dean, 224 F.2d 26, are also relevant.

> "Neither the Humes nor the Sternberger case rules this one, for here the chance that charity will take does not depend upon the probability of anyone having issue, a matter involving an element of volition. In this case the chance that charity will benefit depends entirely upon the relative longevity of three persons, a matter unaffected by volition or personal inducement, for it would be preposterous to assume that either the daughter or the daughter-in-law, or both, would choose to commit suicide in order to defeat the decedent's bequest to charity. In the present situation, then, statistical data is not subject to distortion by any individual's self-interest, and since mortality tables are generally recognized as reliable and have long been used in the courts in tax and other cases, it follows that recognized principles of the actuarial art can safely be relied upon to cope with the contingency that charity will take in this particular case."

This same distinction applies here. At the time of the decedent's death the possibility of more grandchildren being born, thereby increasing the possibility of more preferred recipients of scholarships, could not be accurately computed in compliance with applicable case law. The inability to compute the number of

grandchildren causes the plaintiffs' alternative position to be founded upon sand. For the aforementioned reasons, the plaintiffs' alternative position cannot be accepted.

The attorneys for the United States will prepare and submit findings of fact, conclusions of law and judgment in conformity with this opinion.