**Glen C. GASKILL, Executor of the Estate of Sophie B. Gaskill, Deceased, Plaintiff,**

v.

**The UNITED STATES of America, Defendant.**

**Civ. A. No. 82–1160.**

United States District Court, D. Kansas.

Jan. 31, 1983.

Jack E. Dalton, Mangan Dalton & Trenkle Chartered, Dodge City, Kan., for plaintiff.

Jim J. Marquez, U.S. Atty., Topeka, Kan., Glen R. Dawson, Trial Atty., Tax Div., Dept. of Justice, Washington, D.C., for defendant.

### OPINION AND ORDER GRANTING SUMMARY JUDGMENT TO PLAINTIFF

THEIS, District Judge.

This is a suit by Glen C. Gaskill, as Executor of the Estate of his mother, Sophie B. Gaskill, to force the refund of $90,306.62 in estate taxes that were paid on or about December 26, 1979, because of the allegedly erroneous inclusion in Sophie Gaskill's gross estate of certain life estate interests as general powers of appointment under 26 U.S.C. § 2041. The parties agree that no material facts are in dispute, as the proper resolution of the case depends only on whether those life estate interests are properly categorized as pure life estates or as general powers of appointment. The case is currently before the Court on cross motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

### I. Factual Background

Sophie Gaskill's husband, E.L. Gaskill, died testate on November 13, 1952. His will directed that his wife take the house, furniture, fixtures, utensils, and family automobile in fee simple, along with an undivided one-half interest in all of the residue of his estate. Debts, taxes, and administrative expenses were directed to be paid from the remaining half of the residue, and the remainder of that half was disposed of by the following clauses of the will:

"III. If my said wife survive me I give, devise and bequeath her a life estate in and to all of the rest, residue and remainder of my estate, real, personal and mixed, wheresoever situated or located, with full rights, powers and authorities to sell, convey, exchange, lease for oil and gas and otherwise, assign, transfer, deliver and otherwise dispose of any part or all of said estate during her lifetime, all without authority of or order from any Court.

"IV. Subject to said life estate I give, devise and bequeath all of the remainder of my estate, or if my wife not survive me then all of the rest, residue and remainder of my estate after payment of all items in Paragraph II hereof, unto my children, to-wit:

Blanche McCue, my daughter, Moscow, Kansas; Gerald E. Gaskill, my son, Hugoton, Kansas; Glen V. Gaskill, my son, Moscow, Kansas; Lloyd A. Gaskill, my son, Moscow, Kansas; Evelyn Gaskill, my daughter, Elkhart, Kansas; and Mildred Greenwood, my daughter, Moscow, Kansas,

equally, share and share alike, in fee simple, subject only to the following provisions, to-wit:

Should any of my said children precede me in death then their share and portion of said estate shall descend to their children, issue of their body, share and share alike if more than one. If such deceased child leave no child or children, issue of his or her body, then such share shall pass to the surviving beneficiaries under this residuary clause, to be divided among them equally, share and share alike, per stirpes and not per capita."

According to Schedule H of Sophie Gaskill's federal estate tax return, the property in which she received the interest specified in clause III of E.L. Gaskill's will consisted of fourteen quarter-sections of land. The interest held by Sophie Gaskill was described in Schedule H as "a life estate with power of sale," and her gross estate was augmented by $294,698 by the inclusion of this property.

## II. Controlling Legal Principles

The pertinent provisions of 26 U.S.C. § 2041 are as follows:

"§ 2041. Powers of Appointment.

(a) In general. The value of the gross estate shall include the value of all property.

.     .     .     .     .

(2) ... To the extent of any property with respect to which the decedent has at the time of his death a general power of appointment created after October 21, 1942, or with respect to which the decedent has at any time exercised or released such a power of appointment by a disposition which is of such nature that if it were a transfer of property owned by the decedent, such property would be includible in the decedent's gross estate under sections 2035 to 2038, inclusive.

.     .     .     .     .

(b) Definitions. For purposes of subsection (a)—

(1) General power of appointment. The term 'general power of appointment' means a power which is exercisable in favor of the decedent, his estate, his creditors, or the creditors of his estate; except that—

(A) A power to consume, invade, or appropriate property for the benefit of the decedent which is limited by an ascertainable standard relating to the health, education, support or maintenance of the decedent shall not be deemed a general power of appointment."

The Treasury Regulations promulgated under this section provide additional insight:

"20.2041–1. Powers of Appointment, in general.

.     .     .     .     .

(b) Definition of 'power of appointment'—

(1) In general. The term 'power of appointment' includes all powers which are in substance and effect powers of appointment regardless of the nomenclature used in creating the power and regardless of local property law connotations. For example, if a trust instrument provided that the beneficiary may appropriate or consume the principal of the trust, the power to consume or appropriate is a power of appointment.

.     .     .     .     .

(c) Definition of 'general power of appointment'—

(1) In general. The term 'general power of appointment' as defined in section 2041(b)(1) means any power of appointment exercisable in favor of the decedent, his estate, his creditors, or the creditors of his estate, except

(i) joint powers ... and

(ii) certain powers limited by an ascertainable standard, ..."

Of course, the provisions of the will of E.L. Gaskill do not grant a power of appointment to Sophie Gaskill in so many words. Instead, a life estate with a power of disposition is granted. This Court must look to Kansas law to ascertain the substance and effect of this life estate and power of disposition, *Gunn v. United States,* 233 F.Supp. 931 (D.Kan.1964), even though the taxability of the interest as so determined is controlled by federal law, *Morgan v. Commissioner,* 309 U.S. 78, 60 S.Ct. 424, 84 L.Ed. 585 (1940).

## III. Analysis and Discussion

The issue in this case must be resolved by interpreting the language of the will to determine if the life estate and power of

disposition granted to Sophie Gaskill gave her the power, under Kansas law, to "appoint" the subject matter of the life estate to herself, her estate, her creditors, or the creditors of her estate. Because a life estate with a power of disposition is not equivalent to a fee interest under Kansas law, *Windscheffel v. Wright,* 187 Kan. 678, 360 P.2d 178 (1961), and because such a life estate therefore terminates at death, the inherent nature of the interest itself precludes the possibility of an "appointment" to an estate or the creditors of an estate. The question, therefore, is simplified to whether Sophie Gaskill could have "appointed" her interest to herself or her creditors under Kansas law. Because the will does not expressly provide for any appointment of the life estate property, the question can be further simplified to the following crucial inquiry. Do the terms of E.L. Gaskill's will, as interpreted under Kansas law, imply in favor of Sophie Gaskill the right to consume the life estate property? If they do, that power of consumption is a general power of appointment under Reg. 20.2041–1(b)(1), and consequently taxable under 26 U.S.C. § 2041.

■ As a preliminary matter, this Court notes that it is required by Kansas law "in construing the provisions of a will to place itself in the shoes of the testator at the time he made the will and determine as best it can the purpose and intentions he endeavored to convey by the language used." *In re Estate of Lehner,* 219 Kan. 100, 102, 547 P.2d 365 (1976). The intent of the testator, as perceived by this Court, must be given effect if possible, *id.* at 103, 547 P.2d 365.

The will of E.L. Gaskill, in this Court's opinion, expresses a clear and unambiguous intent that the entirety of the property comprising the life estate eventually find its way to the named remaindermen. The language in clause IV leaves no doubt on this score: "Subject to said life estate I give, devise and bequeath *all* of the remainder of my estate . . . unto my children." (Emphasis added.) This language is obviously inconsistent with a power on the part of Sophie Gaskill to appoint the property to herself or her creditors by consuming it.

It is instructive to contrast this language with that in the wills in the cases that the United States cites for the proposition that a right to consume the life estate property must be implied in this case. In *In re Estate of Lehner,* supra, the will granted a life estate with power of disposition in "all of the rest, residue and remainder" of the testator's property, and provided that "the remainder of such residue remaining" at the death of the life tenant should go to the remaindermen. The Kansas Supreme Court held that:

"In the instant case, a further indication of the testator's intention to grant his widow the power of disposition can be found in that clause of the will which devises and bequeaths the 'remainder of such residue remaining upon my wife's death, as well as the proceeds remaining from the sale or pledge of any such properties,' to the named remaindermen. By use of the phrase 'residue remaining' the testator has indicated there is a possibility of diminution of the residuary estate. This would only be true if the life tenant has the power to invade the corpus and dispose of the funds; otherwise, the word 'remaining' would be meaningless." *Id.* at 105, 547 P.2d 365.

Likewise, in *Pearson v. Orcutt,* 106 Kan. 610, 189 P. 160 (1920), the testator inarticulately granted a life estate with power of disposition in "all property, real, personal, and mixed," with an additional provision directing that, in the event the life tenant "shall not have sold or disposed of all of my property prior to her death . . . then out of such of my estate as shall remain," a sum certain was to be paid to an identified recipient and the remainder was to go to the remaindermen. The Kansas Supreme Court held:

"That the children of the testator and his wife should share the property between them on her death, so far as it had not been used up in providing for her maintenance or in following plans devised by her consistent with the reasonable conserva-

tion of the estate—at all events not destructive of it—was an intention as readily to be gathered by reading the will as though it had been expressly stated." *Id.* at 615, 189 P. 160.

Finally, in *Condon National Bank of Coffeyville, Kansas v. United States,* 349 F.Supp. 755 (D.Kan.1972), on which the United States places great reliance, the testator granted a life estate with power of disposition in the following clause of his will:

"SECOND: All of the rest and residue of my property, real, personal or mixed, whatsoever and wheresoever situated, in which I may have any interest at the time of my death, I give, devise, and bequeath unto my beloved wife, HELEN F. BROWN, with full power to sell or dispose of the same or any part thereof as to her shall seem best: PROVIDED That whatever of my said property, if any, shall remain undisposed of at the time of the death of my wife, HELEN F. BROWN, I give, devise and bequeath the same, one-half to my heirs then surviving, and one-half to the heirs of my wife then surviving."

This Court, per Judge Templar, held: "Section 2041(a)(2) of the Internal Revenue Code of 1954 provides, in substance, that a decedent's gross estate shall include the value of any property with respect to which the decedent had at the time of his death a general power of appointment.

The will of Mr. Brown expressly granted to his wife the 'full power to sell or dispose' of the residue of his property 'as to her shall seem best.' Under Kansas law, this power of disposition, expressly granted, is unlimited except that it has been held that one may not transfer the property by gift or in [the] absence of consideration, or by will where there is a gift over to others at the termination of the life estate.

We feel compelled to conclude that under Kansas law Helen F. Brown could, under the will of Douglas R. Brown, appoint to herself or to her creditors, and could have

under such power consumed the entire estate of her husband but that she could not dispose of it otherwise, that is, by gift or will." *Id.* at 758–69 (citation omitted).

The distinction between the language in E.L. Gaskill's will and the language in the wills in these three cases is immediately apparent. In the latter three cases, the testators explicitly recognized the possibility that the property held by the life tenants would diminish in quantity and value before that property found its way into the hands of the remaindermen by the use of language such as "the remainder of such residue remaining," "such of my estate as shall remain," and "whatever of my said property, if any ..." The Gaskill will, in strong contrast, unambiguously directs that *all* of the life estate property shall go to the remaindermen at the life tenant's death.

As the United States has correctly pointed out in its brief, "the statute and accompanying regulations make it clear that the legislative intent was to include in a decedent's estate all the economic value that the decedent was in a position to divert to her own use if she so desired. *Pittsburgh National Bank v. United States,* 319 F.Supp. 176 (W.D.Pa.1970)." Sophie Gaskill was not in a position to divert to her own use the life estate property granted to her by her husband's will. True, the will granted her far-reaching powers to sell, convey, exchange, lease for oil and gas and otherwise, assign, transfer, deliver, and otherwise dispose of any part or all of the life estate property. Under Kansas law, however, such powers "grant to the life tenant an unlimited power of disposition, subject only to the restrictions that the life tenant may not transfer the property by gift or without adequate consideration, or devise the property by will." *In re Estate of Lehner,* supra, 219 Kan. at 104, 547 P.2d 365. In other words, Kansas law interprets these powers of disposition in such a way as to require the full and fair value of the property disposed of to return to the hands of the life tenant. In dealing with the life estate property, or its proceeds, "the life tenant does not have the power to encroach

upon or dispose of the corpus of the life estate. . . . The relation of a life tenant to a remainderman is frequently referred to as that of a trustee or *quasi* trustee in the sense that he cannot injure or dispose of the property to the injury of the remainderman, but he may nonetheless use the property for his exclusive benefit and take all the income and profits." *Id.* at 103, 547 P.2d 365 (citations omitted).

It is therefore clear that Sophie Gaskill had unlimited powers to dispose of the life estate property, but that Kansas law imposed a correlative duty on her to make any such dispositions for full consideration and to hold the proceeds as a quasi-trustee for the remaindermen. Because the will provides no express authority for Sophie Gaskill to appropriate and consume the life estate corpus, and because this Court can discern no basis under the language of the will or Kansas law for implying such authority, Sophie Gaskill did not possess the power to appoint any of the life estate property to herself or her creditors. She therefore had no general power of appointment under Reg. 20.2041–1(b)(1) and 26 U.S.C. § 2041, and the inclusion of $294,698 in her gross estate under those provisions was an error.

IT IS THEREFORE ORDERED that the defendant United States of America forthwith refund to Glen C. Gaskill, executor of the Estate of Sophie B. Gaskill, the sum of $90,306.62, together with the federal statutory interest payable thereon as computed by the Commissioner of Internal Revenue in accordance with 28 U.S.C. § 2411 and 26 U.S.C. § 6621, to be distributed in accordance with the will of Sophie B. Gaskill.